880 P.2d 238

**STATE of Idaho, Plaintiff–Respondent,**

v.

**William D. MOORE, Defendant–Appellant.**

**No. 20261.**

Supreme Court of Idaho,
Pocatello, May 1994 Term.

Aug. 1, 1994.

Walker & Reagan, Coeur d'Alene, and Brian E. Elkins (argued), Ketchum, for appellant.

Larry EchoHawk, Atty. Gen., and Lynn E. Thomas, Deputy Atty. Gen. (argued), Boise, for respondent.

McDEVITT, Chief Justice.

## I

## BACKGROUND AND PROCEDURE

On January 2, 1992, William D. Moore (Moore) was arrested and charged with first degree murder in connection with the killing of his wife, Joanne Sousa Moore (Mrs. Moore). Prior to trial, both Moore and the State moved the trial court for a psychiatric evaluation to determine whether Moore was competent to stand trial. The trial court ordered the examination, and Moore was pronounced competent to proceed. After the evaluation, the State filed an amended indictment charging Moore with second degree murder.

At trial, the State established that Mrs. Moore's sister, Kathleen Bonasera, and Mrs. Bonasera's husband, Thomas Bonasera, became worried about Mrs. Moore's whereabouts and called the Moore residence. Moore told them that Mrs. Moore had taken a trip to Spokane, and could not return due to poor road conditions. Because the roads were clear at that time, Mr. Bonasera suggested that Moore look for Mrs. Moore near the Moore house. Mr. Bonasera also suggested that Moore notify the sheriff. After the conversation, Mr. Bonasera telephoned the Kootenai County sheriff's office, and arranged to meet a deputy near the Moore residence. Deputy Nordgaarden met Mr. Bonasera at the Bonasera residence, near Moore's house. Moore was then seen driving by the Bonasera residence, and was stopped by Mr. Bonasera. The three men then drove to Moore's house.

Upon entering the house, both Deputy Nordgaarden and Bonasera testified that they noticed the strong odor of decomposing flesh. They also noticed that the temperature in the house was very cold, and all of the windows were open. While Deputy Nordgaarden questioned Moore, Mr. Bonasera left the house to look around the Moore property. Mr. Bonasera located Mrs. Moore's partially covered body in an open-air barn near the Moore house. Mr. Bonasera notified Deputy Nordgaarden who examined the body, notified Moore of his *Miranda* rights, and continued questioning Moore about Mrs. Moore's disappearance.

In order to establish the cause of death, the State called Dr. George R. Lindholm, a forensic pathologist. Dr. Lindholm concluded that Mrs. Moore's death was the result of "compression of her neck, resulting in strangulation." The State also presented testimony from several members of Mrs. Moore's family, who were with Mr. and Mrs. Moore on Christmas day, the day before Mrs. Moore was killed. Those witnesses generally testified that Moore's behavior did not seem abnormal.

The defense consisted primarily of Moore's account of the killing and testimony from an expert in behavioral medicine. Moore testified that Mrs. Moore approached him and began screaming, hit him, and scratched his face. Moore stated that he then grabbed Mrs. Moore's wrists and covered her mouth to silence her. When Mrs. Moore stopped moving, Moore stated he assumed she was pretending to be asleep. Moore left the house, went to the supermarket, and returned to the house, where he discovered that Mrs. Moore was dead. Moore did not notify anyone of Mrs. Moore's death and began drinking heavily for several days. Moore also testified that, although he does not remember doing it, he moved Mrs. Moore's body to the barn and tried to clean the house.

Moore also called John T. Lloyd, a specialist in behavioral medicine and neuropsychology. Lloyd explained the tests he had performed on Moore and testified that Moore suffers from Alzheimers disease, and that Moore's condition had significantly worsened since the time of the killing. Lloyd testified that, in his opinion, Moore did not intend to harm or kill Mrs. Moore.

During rebuttal, the State called William H. Miller, the psychiatrist who initially examined Moore to determine if he was competent to stand trial. Dr. Miller testified that Moore was suffering from early stages of dementia as a result of Alzheimers disease. The State also called Dennis Sheppard, a forensic psychologist, who testified that nothing in the record indicated that Moore lacked the ability to form the specific intent to kill, and that the improvement in Moore's condition after being incarcerated indicated that Moore's alcohol binge was more important to the diagnosis than Alzheimers disease.

The jury returned a verdict finding Moore guilty of second degree murder. After the trial court denied Moore's motions for a judgment of acquittal or a new trial, Moore moved the trial court to order a pre-sentencing psychiatric evaluation. At a hearing on the motion, Dr. Lloyd testified that Moore should be screened every six months to see the extent that the dementia is progressing, that an MRI (magnetic resonance imaging) scan could be used to rule out alternative diagnoses, such as vascular disease, brain tumor, brain atrophy, etc., and that a PET (Positive Emission Tomography) scan could be used to confirm the diagnosis of Alzheimers disease. The trial court denied Moore's motion from the bench, noting that both parties had presented several evaluations, all of which essentially agreed with the diagnosis of Alzheimers disease. The court then sentenced Moore to the custody of the State Board of Corrections for fifteen years, ten years fixed.

On appeal, Moore claims that the legislative repeal of the insanity defense in Idaho violates the Idaho and United States constitutions, and asserts that the trial court erred by refusing to give Moore's requested jury instructions and by imposing sentence without ordering a pre-sentencing mental examination.

## II

## THE REPEAL OF THE INSANITY DEFENSE DOES NOT VIOLATE THE DUE PROCESS CLAUSES OF THE IDAHO OR UNITED STATES CONSTITUTIONS

■ This Court has repeatedly confirmed the constitutional validity of I.C. § 18–207, which eliminated mental condition as a defense in criminal proceedings. *State v. Odiaga*, 125 Idaho 384, 388, 871 P.2d 801, 805 (1994); *State v. Winn*, 121 Idaho 850, 854, 828 P.2d 879, 883 (1992); *State v. Card*, 121 Idaho 425, 429, 825 P.2d 1081, 1085, *cert. denied*, —— U.S. ——, 113 S.Ct. 321, 121 L.Ed.2d 241 (1992); *State v. Searcy*, 118 Idaho 632, 637, 798 P.2d 914, 919 (1990). Moore simply asserts that this Court should overrule its prior decisions on this issue, an invitation this Court has previously declined. *See Odiaga*, 125 Idaho at 388, 871 P.2d at 805 ("Having previously decided this question, and being presented with no new basis upon which to consider the issue, we are guided by the principle of *stare decisis* to adhere to the law as expressed in our earlier opinions."), *citing Card*, 121 Idaho at 444, 825 P.2d at 1100 (McDevitt, J., specially concurring).

## III

## THE TRIAL COURT DID NOT ERR BY REFUSING TO GIVE MOORE'S REQUESTED JURY INSTRUCTIONS

At trial, Moore requested several instructions on the issue of mental state, as well as a *Holder* instruction on the use of circumstantial evidence in the State's case. The trial court did not give these instructions, holding that the issue of mental state was adequately covered through other instructions and noting that a *Holder* instruction was not warranted. On appeal, Moore asserts the trial court erred by not giving his requested instructions 32, 33, 34, 41, 42 and 44.

I.C. § 19–2132(a) directs that, "[i]n charging the jury, the court must state to them all matters of law necessary for their information." When reviewing the trial court's refusal to give a requested instruction, this Court will read the instructions given by the trial court as a whole in order to determine whether the jury was fully and fairly instructed on the applicable law. *State v. Eastman,* 122 Idaho 87, 89, 831 P.2d 555, 557 (1992). The trial court need not give a requested instruction if it incorrectly states the law, is not supported by the facts of the case, or is adequately covered by the instructions given by the court. *Id.; State v. Fodge,* 121 Idaho 192, 195, 824 P.2d 123, 126 (1992); *State v. Olsen,* 103 Idaho 278, 285, 647 P.2d 734, 741 (1982).

Moore requested several instructions on the issue of the mental state necessary to form the requisite intent to be guilty of murder. Specifically, Moore requested that the trial court instruct the jury that evidence of Moore's mental condition should be weighed to determine the extent to which it may have prevented him from forming the specific intent to commit the crime or degree of crime with which he was charged. The instructions given by the trial court informed the jury of the classes of people capable of committing crimes, the necessity of finding that Moore manifest the mental state of malice aforethought in order to convict him of murder, and the need to find that Moore possessed specific intent in order to convict him of the crime of second degree murder. These instructions adequately informed the jury of the issues that they were required to resolve in order to convict or acquit Moore on the charge of murder, or the lesser included offense of manslaughter. The trial court did not err by refusing the additional instructions submitted by Moore on the issue of mental state.

Moore also argues that the trial court erred by failing to inform the jury that, in order to convict on circumstantial evidence, there must be no reasonable hypothesis other than the defendant's guilt which accounts for the circumstantial evidence. In *State v. Holder,* 100 Idaho 129, 594 P.2d 639 (1979), this Court held that it was error not to give

this type of instruction where the State's case is based solely on circumstantial evidence. However, this Court has rejected the proposition that a *Holder* instruction is required in cases where the State's case does not wholly rely on circumstantial evidence. *State v. Bingham,* 124 Idaho 698, 700, 864 P.2d 144, 146 (1993); *State v. Phillips,* 123 Idaho 178, 182, 845 P.2d 1211, 1215 (1993). In this case, intent was the only element of the State's case not proven through direct evidence. As such, it was not error for the trial court to refuse the requested instruction.

## IV

## THE TRIAL COURT DID NOT ERR BY NOT ORDERING A PRE-SENTENCE MENTAL EXAMINATION

Idaho law provides that no person who lacks the capacity to assist counsel or understand the proceedings against him or her shall be tried, convicted, sentenced, or punished during the period of incompetency. I.C. § 18–210. When considering the sentence to be imposed, if the defendant's mental condition is a significant issue, the sentencing judge must also weigh that mental condition as a sentencing consideration. I.C. § 19–2523. Moore contends that the trial court erred by failing to order a pre-sentencing psychiatric evaluation because there was reason to believe that Moore was incompetent to proceed to sentencing as well as evidence that Moore's condition was a significant issue.

The only evidence that Moore may have been incompetent at the time of sentencing is an affidavit from his attorney making that assertion. The defense also submitted an affidavit and testimony from Dr. Lloyd. However, the evidence produced through Dr. Lloyd established that Moore possessed the ability, although limited, to understand the nature and context of the proceedings against him. Moreover, the additional testing recommended by Dr. Lloyd was treatment oriented. None of the testing recommended by Dr. Lloyd was oriented to determining the present status of Moore's

illness as it related to either competency or as a mitigating factor.

■ The decision of whether to order additional psychological evaluations in light of the psychological data presented before and during trial is an issue left to the discretion of the trial court. *State v. Brown,* 121 Idaho 385, 392, 825 P.2d 482, 489 (1992) (*citing State v. Olin,* 103 Idaho 391, 395, 648 P.2d 203, 207 (1982)). In this case, there is extensive evidence to support the trial court's conclusion that Moore was competent at sentencing.

■ The record also clearly shows that the trial court considered Moore's mental condition as a sentencing factor, noting that Moore's physical and mental health were the primary issues it considered when determining Moore's sentence. At the time of sentencing, the court had before it a substantial amount of psychological data on Moore, including an evaluation from Dr. Lloyd that was less than two weeks old. The court noted that it had discretion to decide whether to order another evaluation, and exercised that discretion reasonably in light of the facts of this case.

## V

### CONCLUSION

Moore's conviction and sentence on the charge of second degree murder are affirmed.

JOHNSON, TROUT and SILAK, JJ., and REINHARDT, J. Pro Tem., concur.