178 P.3d 630

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Nathan Todd BANBURY, Defendant–Appellant.**

**No. 33417.**

Court of Appeals of Idaho.

Sept. 26, 2007.

Molly J. Huskey, State Appellate Public Defender; Heather M. Carlson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Nathan Todd Banbury was convicted and sentenced for grand theft. On appeal, he contends that the district court erred by failing to obtain a psychological evaluation of Banbury before pronouncing sentence. We conclude that error occurred, and we therefore vacate the sentence and remand.

## I.

## BACKGROUND

Banbury stole an automobile in Blackfoot and drove it to nearby Pocatello, where it was found approximately two weeks later near a homeless shelter at which Banbury resided. Banbury told an investigating officer that he was working for the F.B.I. in a classified undercover capacity and that his superiors had assigned the vehicle to him. Banbury was arrested and charged with grand theft, Idaho Code §§ 18–2403(1), 18–2407(1)(b).

Concerns immediately arose regarding Banbury's mental health, and the magistrate ordered a competency evaluation pursuant to I.C. § 18–211. The evaluating psychologist, Dr. Christensen, reported that Banbury was paranoid during their interview, commenting that the psychologist looked like the prosecuting attorney and expressing concerns that the psychologist was an undercover police officer trying to trick Banbury into disclosing information. Banbury refused to answer the psychologist's questions, occasionally stating that he had a right to remain silent. Dr. Christensen opined that Banbury was not competent to assist in his defense and might be psychotic. The psychologist recommended that Banbury be referred for psychiatric evaluation and treatment, because, given Banbury's uncooperative nature, development of a clear understanding of his condition would require an extended evaluation process and treatment, possibly including medication and psychotherapy.

Banbury was thereupon transported to Idaho State Hospital South, a mental hospi-

tal, for "competency restoration treatment." A state psychologist wrote a report ten days after Banbury's arrival, stating that Banbury was suspicious, uncooperative, and oppositional, that he refused to respond to interview questions, and that he declined a trial of medication. The psychologist concluded that Banbury did not have a treatable mental condition, but instead his behaviors were due to a personality disorder with antisocial, paranoid, and self-centered traits. The state psychologist concluded that Banbury was competent to aid in his defense and requested that he be transferred back to the jail as soon as possible because of the facility's urgent need for bed space.

Banbury thereafter pleaded guilty upon the prosecutor's agreement to recommend probation. A presentence investigation was conducted, during which Banbury was friendly and cooperative and willingly participated in an interview. He stated that his father, W. Banbury, died in 1996, that his mother was Cathy Cain, that he was an only child, that he had no children of his own, that he owned $190,000 worth of assets and had an income of $16,000 per month from an inheritance and investments, and that he was not in need of mental health counseling. The PSI investigator also spoke to Banbury's mother, not named Cathy Cain, and his father, not named W. Banbury, and documented their statements in the report. The woman that the investigator identified as Banbury's mother said that she had never heard of a Cathy Cain, that W. Banbury was not Banbury's father but rather his grandfather, that Banbury's father was T. Banbury, that Banbury had two full brothers and several step-siblings, that Banbury had fathered two children with whom he had no contact, that Banbury had no income from an inheritance but was to her knowledge homeless and indigent, and that, in her opinion, Banbury was in need of a thorough psychological evaluation. Banbury's father confirmed much of this information. As a result of these and other factual discrepancies, the PSI investigator recommended a period of retained jurisdiction and, because Banbury had problems distinguishing reality from fiction, that he receive a mental health evaluation and treatment during the retained jurisdiction.

At sentencing, the district court engaged in an extensive colloquy with Banbury concerning the factual discrepancies in the PSI. Banbury personally objected to everything reported in the PSI that he did not tell the investigator himself. Banbury insisted that T. Banbury was not his father but was a non-related family friend who merely shared his last name by coincidence, that W. Banbury was not his grandfather but his father, that the woman interviewed by the PSI investigator was not his mother and he no idea who she was, that his mother was Cathy Cain who lived in Tucson, Arizona, that he had no brothers and sisters, that he had a monthly income of $16,000 from an inheritance, that he had no mental health problems, and that he found it amusing that the PSI investigator believed he had problems distinguishing reality from fiction. In compliance with the plea agreement, the State recommended probation. A Department of Correction representative, however, expressed the opinion that Banbury could not succeed on probation in his current condition. He therefore recommended that the district court retain jurisdiction so that Banbury could receive a psychological evaluation and treatment in a structured environment for a significant period of time, with the aim that he could perhaps be prepared to be reintegrated into the community.

Ultimately, the district court followed the recommendations of the PSI and the Department of Correction representative. The district court concluded that the competency evaluations that had been done earlier were insufficient for sentencing purposes, there being a difference between "being able to assist in your defense and having a mental health problem." The court imposed a unified six-year sentence with a one-year determinate term, but retained jurisdiction for one hundred and eighty days pursuant to I.C. § 19–2601(4). The court further ordered that Banbury be given a psychological evaluation and treatment during the retained jurisdiction period because the court desired additional information on Banbury's mental condition.

Banbury was sent to the North Idaho Correctional Institution (N.I.C.I). Fifty days into the retained jurisdiction period, an N.I.C.I. official wrote a report recommending that the district court relinquish jurisdiction because Banbury constantly lied and "refused to take any kind of responsibility for his crime or anything else in his life." The report indicates that N.I.C.I. conducted an initial needs assessment and devised a program plan for Banbury, but the district court's order for a psychological evaluation was, apparently, completely overlooked. No psychological evaluation was planned or conducted, nor was any psychological treatment offered. Upon receipt of this report, the district court relinquished jurisdiction, apparently without a hearing.

On appeal, Banbury contends that the district court erred by failing to order and obtain a psychological evaluation before imposing sentence, or in the alternative, before deciding to relinquish jurisdiction.

## II.

## ANALYSIS

■ Idaho Code § 19–2522(1) provides that if there is reason to believe that the mental condition of the defendant will be a significant factor at sentencing, the sentencing court must appoint a psychiatrist or psychologist to examine and report upon the defendant's mental condition.[1] "The language of this statute is mandatory, requiring that the trial court obtain a psychological evaluation whenever there is reason to believe that the defendant's mental condition will be of significance for the determination of an appropriate sentence." *State v. Coonts,*

137 Idaho 150, 152, 44 P.3d 1205, 1207 (Ct. App.2002).

At the sentencing hearing, the district court here determined that a further psychological evaluation was needed, thereby implicitly concluding that the requirements of I.C. § 19–2522 were applicable because the mental condition of the defendant would be a significant factor at sentencing. This is a determination with which we heartily agree. Information in the arrest reports, the competency evaluation reports, and the PSI cry out for a thorough assessment of Banbury's mental condition and a determination whether treatment would be helpful. Such information could aid the court in assessing Banbury's true culpability for the offense, his suitability for probation, and the type of treatment that should be ordered or recommended during probation or incarceration.

Although the district court here ordered that a psychological evaluation be conducted during retained jurisdiction, while Banbury would be in the custody of the Department of Correction, Banbury argues that this was insufficient because I.C. § 19–2522 requires that the evaluation be available to the court to inform the sentencing decision, and that requirement cannot be satisfied by a post-sentencing evaluation. For this proposition, Banbury relies on *Coonts,* 137 Idaho 150, 44 P.3d 1205, where the district court declined to order and obtain a psychological evaluation before sentencing and, instead, held that the defendant could be evaluated at the Department of Correction after sentencing. On review, this Court held that a psychological evaluation was necessary in light of the defendant's mental condition and found error in

---

1. Idaho Code § 19–2522 states in part:
   (1) If there is reason to believe the mental condition of the defendant will be a significant factor at sentencing and for good cause shown, the court shall appoint at least one (1) psychiatrist or licensed psychologist to examine and report upon the mental condition of the defendant.... The order appointing or requesting the designation of a psychiatrist or licensed psychologist shall specify the issues to be resolved for which the examiner is appointed or designated.
   ....
   (3) The report of the examination shall include the following:

   (a) A description of the nature of the examination;
   (b) A diagnosis, evaluation or prognosis of the mental condition of the defendant;
   (c) An analysis of the degree of the defendant's illness or defect and level of functional impairment;
   (d) A consideration of whether treatment is available for the defendant's mental condition;
   (e) An analysis of the relative risks and benefits of treatment or nontreatment;
   (f) A consideration of the risk of danger which the defendant may create for the public if at large.

the district court's failure to obtain the evaluation before crafting the sentence. We said:

> Nor does the availability of a mental health evaluation by the Department of Correction satisfy the statutory mandate. Section 19–2522 does not require a psychological evaluation merely to enlighten correctional officials *who must make decisions on the defendant's conditions of confinement and treatment while incarcerated;* the statute requires that the evaluation be conducted *before* sentencing so that the trial court will have the benefit of the evaluator's insights in fashioning an appropriate sentence.

*Id.* at 153, 44 P.3d at 1208.

*Coonts* arguably is distinguishable from the present case because the court here retained jurisdiction through Banbury's initial imprisonment and contemplated that a psychological evaluation would be conducted while jurisdiction was retained. Because the court's jurisdiction continued, it reserved the ability to modify Banbury's sentence, including placing Banbury on probation, after receiving the contemplated evaluation. *See* I.C. § 19–2601(4); *State v. Wolfe,* 99 Idaho 382, 385, 582 P.2d 728, 731 (1978), *overruled on other grounds by State v. Coassolo,* 136 Idaho 138, 142–43, 30 P.3d 293, 297–98 (2001); *State v. Salsgiver,* 112 Idaho 933, 935, 736 P.2d 1387, 1389 (Ct.App.1987). Therefore, unlike the court in *Coonts,* the district court here did not make its *final* sentencing decision at the sentencing hearing but expected to be able to revisit the sentence after the completion of an evaluation by the Department of Correction.

Moreover, the approach taken by the district court here is understandable because a unique challenge was presented by Banbury's prior refusal to cooperate with psychological evaluators attempting to assess his competence. The trial court reasonably could have been concerned that simply ordering another short-term evaluation would yield no greater cooperation and no more useful assessment, whereas an opportunity

for Department of Correction professionals to observe and evaluate Banbury during a 180–day period of incarceration could have yielded a much more thorough and reliable psychological report. In choosing this option, the district court appears to have heeded the recommendation of Dr. Christensen, who initially attempted to evaluate Banbury's competence and who reported that a thorough evaluation of Banbury probably could be accomplished only with an extended evaluation process and treatment. This course of action was also potentially beneficial to Banbury, for through diagnosis and treatment it was conceivable that his mental health could be improved to the point that he would be a viable candidate for probation.

Nevertheless, despite these potential advantages that could have flowed from the district court's choice to order an evaluation by the Department of Correction, we conclude that the procedure was error. As we held in *Coonts,* the I.C. § 19–2522 mandate for a psychological evaluation contemplates that the evaluation be conducted before sentence is imposed. Only by requiring receipt of the evaluator's report before the sentencing hearing may the trial court ensure that the purpose of I.C. § 19–2522 will be fulfilled. The present case illustrates that despite the trial court's laudable intent and expectation that it would obtain a more thorough evaluation of Banbury's mental condition if the evaluation were conducted during retained jurisdiction, that goal was not accomplished because the Department of Correction did not comply with the district court order.[2] Therefore, even if this procedure were permissible under I.C. § 19–2522, it would be highly inadvisable because of the risk that no psychological evaluation would be received by the sentencing court before its period of retained jurisdiction expires.

The State makes two arguments for the proposition that the court's failure to actually obtain a psychological evaluation as mandated by I.C. § 19–2522 was not error. First, the State contends that because the

---

**2.** We need not address whether a sentencing court in a criminal case even possesses authority to order the Department of Correction, an executive branch agency, to utilize its resources to provide particular services to an inmate placed in the Department's custody during retained jurisdiction.

**270**

court had the reports from Dr. Christensen and from the State Hospital South, a further report was unnecessary. This argument is without merit. While it is permissible for trial courts to sentence a mentally ill defendant without a new psychological evaluation if information in existing reports satisfies the requirements of I.C. § 19–2522(3), *see State v. Craner*, 137 Idaho 188, 45 P.3d 844 (Ct. App.2002), the State's argument ignores the insufficiency of the prior reports, the district court's own finding that a further evaluation was needed, and legal limitations on the use of competency examination reports. Dr. Christensen's report acknowledged that he was unable to gain adequate information from Banbury to properly assess his competence, and the report from the State Hospital South was cursory, not addressing at all Banbury's apparent delusions that became more evident in the subsequent PSI report. Moreover, psychological evaluations to determine a defendant's competence to stand trial or aid in his defense conducted pursuant to I.C. § 18–211 often will be insufficient to inform the court's sentencing decision because they will not address the factors delineated in I.C. § 19–2522(3). Certainly, the reports available to the court here were not sufficient to address the sentencing concerns specified in that statute. Finally, in the absence of a waiver by the defendant, statements of the defendant disclosed in a competency evaluation report are not admissible for use at sentencing, except for impeachment purposes. *See* I.C. § 18–215; *State v. Cope*, 142 Idaho 492, 499, 129 P.3d 1241, 1248 (2006). Thus, the reports of Dr. Christensen and the State Hospital South did not suffice to comply with I.C. § 19–2522.

The State also argues that the district court did not err in relinquishing jurisdiction over Banbury without a further psychological evaluation because a defendant may exercise his Fifth Amendment privilege against self-incrimination to refuse participation in a sentencing evaluation. *See Estrada v. State*, 143 Idaho 558, 149 P.3d 833 (2006). The State contends that because the record in this case contains no waiver of Banbury's Fifth Amendment privilege, the district court could not have ordered an evaluation of Banbury without violating Banbury's right against

self-incrimination. The State's position is erroneous because it assumes that Banbury would have invoked the Fifth Amendment and refused to cooperate if a further evaluation had been attempted. What Banbury would have done in that circumstance is pure speculation. While the record does show that he did not cooperate with earlier attempts to evaluate his mental competence, and sometimes referred to his right to silence, by the time of the PSI interview he responded to questions and was fully cooperative (albeit also appearing to be delusional). We find no merit in the State's assertion that a trial court need not comply with I.C. § 19–2522 because a defendant *might* invoke the Fifth Amendment privilege and thereby prevent the evaluation.

The district court violated I.C. § 19–2522 when it sentenced Banbury without having obtained a psychological evaluation as required by I.C. § 19–2522. Therefore, the sentence is vacated and this case is remanded to the district court for further proceedings.

Chief Judge PERRY and Judge GUTIERREZ Concur.

