IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 38512

| STATE OF IDAHO, | ) | |
|---|---|---|
| | ) | Boise, December 2011 Term |
| Plaintiff-Respondent, | ) | |
| | ) | 2012 Opinion No. 10 |
| v. | ) | |
| | ) | Filed: January 6, 2012 |
| MATTHEW W. HANSON, | ) | |
| | ) | Stephen Kenyon, Clerk |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Elmore County. Hon. Michael E. Wetherell, District Judge.

The district court's denial of the request for a competency evaluation is affirmed. The district court's denial of the request for a psychological evaluation is reversed, the judgment is vacated and the case is remanded for proceedings consistent with this opinion.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Diane Walker argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Jessica Lorello argued.

---

HORTON, Justice

Matthew W. Hanson was convicted of aggravated assault. At the sentencing phase, he exercised his Fifth Amendment privilege against self-incrimination and declined to participate in the preparation of the presentence investigation (PSI) report. Hanson later moved the court to order a presentence psychological evaluation. The district court ruled that unless Hanson agreed to participate in the PSI, his motion would be denied on the ground that a defendant may not selectively invoke his Fifth Amendment privilege with respect to different aspects of a single subject. Hanson again declined to participate in the PSI, and the court denied his motion. Hanson's attorney subsequently requested a competency evaluation, which was also denied. Hanson was sentenced to five years, with three years fixed. Hanson moved for reconsideration of his sentence, which motion the district court denied. Hanson appeals the district court's denial of his requests for a psychological evaluation and for a competency evaluation. We affirm in part,

1

vacate the judgment of the district court, and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hanson was convicted of aggravated assault, and the district court imposed a five-year sentence with three years fixed. Hanson's appeal is before this Court on a petition for review after the Court of Appeals vacated the judgment and remanded Hanson's case for resentencing. The Court of Appeals set forth the facts:

During a conversation at a bar, Hanson pulled two hunting knives on a man and threatened to kill him. Hanson was arrested and charged with aggravated assault. I.C. §§ 18-901 and 18-905(b). The Elmore County Jail log reveals that, while Hanson was incarcerated awaiting trial, he exhibited erratic and volatile behavior. On each of ten days, from July 19-29, 2007, Hanson refused to eat at least one and oftentimes all of his meals. Hanson stated that he was on a hunger strike because the people serving him food had bad attitudes. On July 19, jail staff installed a camera in Hanson's cell so they could observe him better. On July 21, jail staff requested Hanson undergo a mental evaluation, but Hanson refused to participate. On July 23, after rising from bed, Hanson was seen swaying in his cell. He fell twice, presumably from lack of food. On July 24, Hanson was transported to the hospital and thereafter began taking an unspecified medication.

On August 10, Hanson requested that all his food be passed to him through the bean slot because he required that his door remain closed at all times. When jail staff refused to comply with his request, Hanson threw his tray against his cell door spraying food around his cell and into the hallway beyond. For twelve days, from August 10-22, Hanson again refused at least one and often all of his meals. On August 20 Hanson returned his bed sheet with a message written on it with dirt. On August 22, after twelve days without food, Hanson again refused medical treatment. On August 24, Hanson called jail personnel complaining that his cell was too hot and threatened that, if the ventilation was not turned on, he would smear feces all over his cell. Hanson's erratic behavior continued from September 2007 to March 2008. Hanson refused daily recreation sixty-seven times, and was often unresponsive to jail authorities. The jail log reveals that after days without incident, Hanson would suddenly become abusive, make threats to jail personnel, throw his food on the floor, and trash his cell.

After a jury trial, Hanson was found guilty of aggravated assault. Several sentencing hearings were held in Hanson's case. At the first sentencing hearing, Hanson informed the district court that he would exercise his Fifth Amendment right against self-incrimination and would not participate in a presentence investigation report (PSI). Despite Hanson's lack of participation, a PSI was prepared that included his criminal history, his Elmore County Jail log, and a 1982 PSI and inmate records that were obtained from the Utah Department of Corrections. The Utah PSI revealed that Hanson had a history of psychological problems including a childhood history of bullying other children and torturing

2

animals, a juvenile psychological evaluation and treatment by an Idaho mental hospital, and several failed suicide attempts.

At the second sentencing hearing, Hanson requested that the district court order a psychological evaluation pursuant to I.C. § 19-2522. The district court denied Hanson's request for a psychological evaluation, reasoning that Hanson could not invoke his Fifth Amendment right against self-incrimination with regard to the PSI and subsequently waive that right so as to participate in a psychological evaluation. The district court further reasoned that a psychological evaluation was not necessary because it did not believe that the additional information provided by a psychological evaluation would be helpful at sentencing.

During the third sentencing hearing, Hanson's counsel requested that Hanson undergo a competency evaluation pursuant to I.C. § 18-210 because of counsel's difficulty communicating with his client and because of Hanson's refusal to participate in the PSI. The district court denied the request for a competency evaluation, reasoning that Hanson had demonstrated that he understood the proceedings against him and was able to assist in his own defense.

The district court sentenced Hanson to a unified term of five years, with a minimum period of confinement of three years. The district court also ordered that Hanson undergo a psychological evaluation and treatment, as well as anger management and therapeutic community programs while incarcerated in the state penitentiary. Based on the district court's imposition of a sentence without ordering competency or psychological evaluations, Hanson filed a motion to reconsider his sentence. The district court denied Hanson's motion.

Hanson timely appealed. The Court of Appeals held that the district court abused its discretion when it denied Hanson's request for a psychological evaluation because Hanson's exercise of his Fifth Amendment privilege regarding the PSI did not preclude him from participating in a presentence psychological evaluation and because the record contained sufficient evidence that Hanson's mental health was a significant factor at sentencing, thus triggering the mandatory psychological evaluation required by I.C. § 19-2522. The Court of Appeals also held that the district court properly considered whether Hanson was capable of assisting with his defense and affirmed the court's denial of Hanson's request for a competency hearing. The Court of Appeals vacated the judgment and remanded to the district court for a presentence psychological evaluation and resentencing. This Court granted the State's petition for review.

## II. STANDARD OF REVIEW

"In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *State v. James*, 148 Idaho 574, 576, 225 P.3d 1169, 1171 (2010) (citing *State v. Oliver,* 144 Idaho 722, 724, 170 P.3d 387, 389 (2007)). "The test for

determining whether a district court abused its discretion is: (1) whether the court correctly perceived that the issue was one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether it reached its decision by an exercise of reason." *Schmechel v. Dillé*, 148 Idaho 176, 181, 219 P.3d 1192, 1197 (2009) (citing *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

### III. ANALYSIS

**A. The trial court erred in denying Hanson's request for a psychological evaluation.**

At Hanson's second sentencing hearing, the district court invited appellate review of its decision not to order a psychological evaluation pursuant to I.C. § 19-2522:

> THE COURT: . . . But he can't say I'm going to participate with one part of the evaluation that I think might help me, but I'm going to stand silent with regard to the rest of the evaluation which I think won't help me. He can either exercise his fifth amendment right or he can choose not to exercise his fifth amendment right. He can't exercise his fifth amendment on one thing and not on the other in terms of the pre-sentence reports.
>
> I don't know of any case that addresses this, since this is a relatively section [sic] of the statute, but I'm more than willing to try and make new case law on it because I think the statute is poorly drafted and poorly interpreted by our Court of Appeals at this point in time.
>
> And so what I would like to see counsel is that if he wants to consent to cooperation then I'm more than willing to let him cooperate in the pre-sentence report and with the psychological evaluation. If he is going to say, no, I'm not going to participate in [the] pre-sentence report, but I want the psychological evaluation, I'm going to say no and we will let the Court of Appeals decide whether or not that can be done under the statute as drafted.

We accept the district court's invitation to address the Court of Appeals' interpretation of I.C. § 19-2522. We agree with that court's application of the plain language of the statute and hold that the district court erred in failing to order a psychological evaluation.

The State argues that Hanson's mental condition was not a significant factor at sentencing and it was therefore within the discretion of the district court to deny Hanson's request for an evaluation. It is true that the decision to order a psychological evaluation lies within the sentencing court's discretion. I.C. § 19–2522(1); I.C.R. 32(d); *State v. Schultz*, 149 Idaho 285, 287, 233 P.3d 732, 734 (Ct. App. 2010). However, the language of the statute clearly indicates that a psychological evaluation is mandatory under some circumstances, stating that

4

when "there is reason to believe the mental condition of the defendant will be a significant factor at sentencing and for good cause shown, the court **shall** appoint at least one (1) psychiatrist or licensed psychologist to examine and report upon the mental condition of the defendant." I.C. § 19-2522(1) (emphasis added). *See also State v. Coonts*, 137 Idaho 150, 152, 44 P.3d 1205, 1207 (Ct. App. 2002) (holding that the language of I.C. § 19-2522(1) "is mandatory, requiring that the trial court obtain a psychological evaluation whenever there is reason to believe that the defendant's mental condition will be of significance for the determination of an appropriate sentence."); *State v. McFarland*, 125 Idaho 876, 879, 876 P.2d 158, 161 (Ct. App. 1994) (holding that under I.C. § 19-2522, "a psychological evaluation and report are *mandatory* '[i]f there is reason to believe the mental condition of the defendant will be a significant factor at sentencing.'") (citations omitted) (emphasis original).

The district court considered the goals of sentencing and determined that because its obligation to protect society was the primary factor in its sentencing decision, Hanson's mental condition would not be a significant factor at sentencing. This determination is not supported by the record.

<u>1. The record demonstrates that Hanson's mental condition was a significant factor.</u>

The defendant's mental condition is a significant factor at sentencing if the sentencing court is aware of a defendant's lengthy history of serious mental illness. In a case where the sentencing court denied the defendant's request for an evaluation, the Court of Appeals considered the facts known to the sentencing court:

> From the point of [his] arraignment, it was known to the trial court that [the defendant] claimed to suffer from a serious mental illness, manic depression, and that he claimed an inability to remember having discussed a plea agreement that had been recently negotiated. By the time he pleaded guilty, [he] was receiving Lithium, a prescription medication for mental disorders. [The defendant] reported to the presentence investigator that he had previously been treated with Lithium, had been self-medicating with illegal drugs, had a history of suicide attempts, and had received mental health treatment intermittently since 1968. . . . A psychological evaluation could have provided useful illumination for the evaluation of [the defendant's] level of culpability and for formulation of a sentence that would be appropriate to meet the goals of sentencing.

*Coonts*, 137 Idaho at 152-53, 44 P.3d at 1207-08. The Court of Appeals then held that "[t]hese facts were sufficient to alert the district court that [the defendant's] mental condition would be an important consideration at sentencing." *Id.* at 153, 44 P.3d at 1208. However, milder mental

disorders and behaviors may not be sufficient to put the sentencing court on notice. *Schultz*, 149 Idaho at 288, 233 P.3d at 735. In *Schultz*, the defendant claimed to have suffered from "mental health issues" her entire life. *Id.* A prior psychological evaluation suggested that she had suffered from a traumatic childhood that had caused "much damage to her psychologically," and diagnosed her with dysthymic disorder.[1] *Id.* The Court of Appeals considered the defendant's history, along with evidence from the PSI indicating substance abuse, and held that the sentencing court did not err by failing to order an evaluation because the record did not "establish a reason to believe her mental condition was a significant factor for sentencing." *Id.* We concur with the analysis of the Court of Appeals reflected in its previous published opinions addressing I.C. § 19-2522 and hold that when the record shows a defendant has a substantial history of serious mental illness, the defendant's mental condition will be a significant factor in determining an appropriate sentence and I.C. § 19-2522 requires the sentencing court to obtain a psychological evaluation prior to sentencing.[2]

A district court's decisions or comments at sentencing may also demonstrate that the defendant's mental condition was a significant factor in determining the sentence. For example, in a case where the sentencing court "made decisions about [the defendant's] mental condition, the role it played in his crimes, and how that was to affect his sentence," the Court of Appeals held that the court had abused its discretion because it made those decisions without the assistance of "any formal psychological evaluation," and "in the absence of any specific information on [the defendant's] mental condition." *State v. Collins*, 144 Idaho 408, 410, 162 P.3d 787, 789 (Ct. App. 2007). In another case, the district court did not order an evaluation prior to sentencing, but did order one after sentencing, during the period of retained jurisdiction, because it "desired additional information" on the defendant's mental condition. *State v. Banbury*, 145 Idaho 265, 267, 178 P.3d 630, 632 (Ct. App. 2007). The Court of Appeals held that by doing so, the sentencing court had "implicitly conclude[d] that the requirements of I.C. § 19-2522 were applicable because the mental condition of the defendant would be a significant factor at sentencing." *Id.* at 268, 178 P.3d at 633; *see also McFarland*, 125 Idaho at 881, 876 P.2d at 163 (holding that the sentencing court should have ordered an evaluation before imposing

---

[1] Dysthymia is considered to be more chronic and less severe than major depressive disorder. http://www.ncbi.nlm.nih.gov/pubmed/10868251.

[2] A new evaluation does not need to be performed if an earlier evaluation has been conducted pursuant to I.C. § 19-2524 and the resulting report satisfies the requirements of I.C. § 19-2522. I.C. § 19-2522(6).

sentence, stating that "we note from the district court's comments at sentencing that it clearly *did* consider McFarland's mental condition and rehabilitative potential as significant factors, albeit without the benefit of a professional diagnosis of that condition or prognosis for improvement.").

Here, the record shows that Hanson's mental condition was a significant factor in determining his sentence. At the sentencing hearing, the district court suggested that the primary factor it considered in sentencing Hanson was its obligation to protect society. However, the court explicitly stated its beliefs that "certain mental factors" existed in Hanson's case and that "the defendant does need psychological treatment." The court recommended various treatments and therapies for Hanson while incarcerated, and that Hanson receive a psychological evaluation. Finally, the court stated that if a mental health facility is ever built at the Idaho State Penitentiary, Hanson should be evaluated for placement there. These decisions and comments demonstrate that the district court considered Hanson's mental condition to be a significant factor at sentencing.

There is also evidence in the record that Hanson has a substantial history of mental illness. The 1982 Utah PSI shows that Hanson had a history of bullying, animal cruelty, obsessive behavior, suicidal thoughts, attempted suicide, auditory hallucinations, and that he had been hospitalized for mental health issues on multiple occasions. Further, Hanson's conduct while he was at the county jail awaiting trial was reported in the Elmore County jail log, which was included within the PSI report. This behavior strongly suggested that Hanson suffered from some form of mental disturbance. Hanson refused food, damaged his cell, threatened to smear feces all over his cell, and was sent to the Elmore County hospital because of his conduct. The sentencing court received the PSI and supporting materials before it denied Hanson's request for a psychological evaluation[3] and was therefore aware of Hanson's erratic behavior while in jail prior to trial and his history of mental illness and substance abuse. While the information regarding Hanson's mental health history is nearly thirty years old, when considered with his more recent conduct and the district court's comments at sentencing, it is manifest that Hanson's mental condition was a significant factor at sentencing. As the district court's decision was

---

[3] The district court ordered the PSI report at a hearing on January 22, 2008. The PSI report was stamped as "Received" on February 15, 2008 and the Utah report as "Received" on February 27, 2008. The court denied Hanson's request at the second hearing, held on March 3, 2008. At that hearing, the court noted that it had "read the reports" about Hanson's conduct while he was in jail.

7

inconsistent with the applicable legal standards, we find that the district court abused its discretion by failing to order a psychological evaluation.

> 2. Hanson's waiver of the Fifth Amendment privilege against self-incrimination with regard to the psychological evaluation did not apply to the entire sentencing proceeding.

The district court also denied Hanson's request for a psychological evaluation because Hanson refused to participate in the preparation of the PSI report. The court reasoned that Hanson could either exercise or waive his Fifth Amendment privilege as to the presentencing proceedings, but that he could not assert the privilege regarding the PSI while waiving it for a psychological evaluation. At the next hearing, the court further explained its decision, suggesting that Hanson was attempting to manipulate the information before the court to his benefit by invoking his privilege as to matters that he believed would not be helpful to him and then waiving the privilege with regard to matters he thought would be helpful.[4] Thus, the court's decision was based on its determination that Hanson was attempting to use his Fifth Amendment privilege to control what information the court had available to it. We now hold that a defendant may waive the Fifth Amendment privilege against self-incrimination in order to submit to a psychological evaluation without waiving the privilege with respect to participation in the PSI.

This Court recently held that it is clear "both at the point of sentencing and earlier, for purposes of a psychological evaluation, a defendant's Fifth Amendment privilege against self-incrimination applies." *Estrada v. State*, 143 Idaho 558, 563, 149 P.3d 833, 838 (2006). Nonetheless, a defendant may not selectively assert his Fifth Amendment privilege against self-incrimination in order to control what information is before the court. The general rule regarding waiver of the privilege is that "a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell v. United States*, 526 U.S. 314, 321 (1999) (citing *Rogers v. United States,* 340 U.S. 367, 373 (1951)). Therefore, "[t]he privilege is waived for the matters to which the witness testifies, and the scope of the 'waiver is determined by the scope of relevant cross-examination.'" *Id.* (quoting *Brown v. United States,* 356 U.S. 148, 154-55 (1958)). The United States Supreme Court's rationale in *Mitchell* was that permitting a witness to "pick and choose what aspects of a particular subject to discuss" would cast doubt on the "trustworthiness of the

---

[4] In its order denying Hanson's Rule 35 Motion for Reconsideration, the district court also noted that, in a letter to the court, Hanson had admitted that he believed cooperating with the PSI would be unfavorable to his case.

statements" and diminish "the integrity of the factual inquiry." *Id.* at 322. That Court was concerned that permitting a witness to control the topics on which he or she will answer questions could distort the facts and "make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell." *Id.* Thus, when a defendant puts a matter before the sentencing court, thereby waiving the privilege, the defendant may not then invoke the privilege as to other matters related to the same subject.

The State argues that the general waiver rule applies to bar Hanson from participating in a psychological evaluation while refusing to participate in a PSI because the two reports cover several of the same topics and share the purpose of assisting the court in its sentencing decision and thus encompass a single subject. While there are topics common to both a PSI and a psychological evaluation, the resulting reports do not constitute a single subject such that waiver of the privilege as to one constitutes waiver as to the other.

The Idaho Criminal Rules require that a PSI report contain the following elements:

(1) The description of the situation surrounding the criminal activity with which the defendant has been charged, including the defendant's version of the criminal act and the defendant's explanation for the act, the arresting officer's version or report of the offense, where available, and the victim's version, where relevant to the sentencing decision.
(2) Any prior criminal record of the defendant.
(3) The defendant's social history, including family relationships, marital status, age, interests and activities.
(4) The defendant's educational background.
(5) The defendant's employment background, including any military record, and defendant's present employment status and capabilities.
(6) Residence history of the defendant.
(7) Financial status of defendant.
(8) Health of the defendant.
(9) The defendant's sense of values and outlook on life in general.
(10) The presentence investigator's analysis of the defendant's condition. That analysis of the defendant's condition contained in the presentence report should include a complete summary of the presentence investigator's view of the psychological factors surrounding the commission of the crime or regarding the defendant individually which the investigator discovers. Where appropriate, the analysis should also include a specific recommendation regarding a psychological examination and a plan of rehabilitation.

I.C.R. 32(b). This list is essentially a requirement for a comprehensive background report on the defendant and the crime for which he is being sentenced. While some of these elements could be

said to have at least an indirect connection to the defendant's mental condition, most are not related to mental condition at all. Further, the structure of I.C.R. 32 recognizes that the PSI report does not provide detailed information regarding mental condition, stating in subsection (10) that the report should contain a "specific recommendation regarding a psychological evaluation." *Id.* Thus, the report must not contain the same information as a report prepared following a psychological evaluation, or the rule would not require the presentence investigator to make recommendations regarding a psychological evaluation where appropriate.

In contrast, when a psychological evaluation is ordered pursuant to I.C. § 19-2522, the report must contain:

> (a) A description of the nature of the examination;
> (b) A diagnosis, evaluation or prognosis of the mental condition of the defendant;
> (c) An analysis of the degree of the defendant's illness or defect and level of functional impairment;
> (d) A consideration of whether treatment is available for the defendant's mental condition;
> (e) An analysis of the relative risks and benefits of treatment or nontreatment;
> (f) A consideration of the risk of danger which the defendant may create for the public if at large.

I.C. § 19-2522(3). These requirements do not merely provide the sentencing court with general background information about the defendant or the offense for which the defendant is to be sentenced. Rather, each requirement is focused directly and exclusively on the defendant's mental condition. The Court of Appeals has held that a "cursory" report is insufficient because a psychological evaluation must provide "in-depth analysis" of the defendant's mental condition. *See, e.g.*, *State v. Durham*, 146 Idaho 364, 371, 195 P.3d 723, 730 (Ct. App. 2008); *Banbury*, 145 Idaho at 270, 178 P.3d at 635; *McFarland*, 125 Idaho at 881, 876 P.2d at 163; *State v. Pearson,* 108 Idaho 889, 891, 702 P.2d 927, 929 (Ct. App.1985). Additionally, the examination and report must be done by a "psychiatrist or licensed psychologist." I.C. § 19-2522(1). The PSI report, on the other hand, "relies greatly on information already available in public records, such as educational background, residence history and employment information." *Estrada*, 143 Idaho at 562, 149 P.3d at 837. Thus, a psychological evaluation is a much narrower and more detailed report that requires professional evaluation, and there is little actual overlap between its contents and that of the PSI report.

Similarly, although a PSI and psychological evaluation share the general purpose of assisting the sentencing court, the specific content of the report prepared following a

psychological evaluation demonstrates that it is intended to be used in a distinct manner at sentencing. The PSI report provides the sentencing court with broad background information regarding the defendant's life and criminal history, and this Court has held that "the primary purpose of a PSI is to assist the district court in sentencing." *State v. Draper*, 151 Idaho 576, ___, 261 P.3d 853, 873 (2011). The purpose of a psychological evaluation, however, "is to assist the district court at sentencing in determining whether to recommend psychological treatment under section 19-2523 during a defendant's confinement or probation." *State v. Harper*, 129 Idaho 86, 91, 922 P.2d 383, 388 (1996). Although both reports aid the sentencing court in its determination of an appropriate sentence, the purpose of a psychological evaluation is specific to the court's evaluation of the defendant's mental condition. Therefore, we hold that a PSI and a psychological evaluation do not cover the same subject for purposes of a defendant's waiver of his Fifth Amendment privilege.

The State also contends that where a defendant refuses to participate in the PSI but is willing to participate in a psychological evaluation, there is a concern about the trustworthiness of the information he provides. It argues that there is no reason to believe the same reasons offered for declining to participate in the PSI do not also apply to a psychological evaluation, suggesting that Hanson's selective waiver is an attempt to manipulate the information before the court.

We note that the policy justifications for the waiver rule in the trial setting are of less concern in the context of the presentence process because PSI and psychological evaluation reports cover different topics. In *Mitchell*, the United States Supreme Court was concerned about the integrity of the "factfinding" process during trial, explaining that the waiver rule exists to prevent a trial witness from using the privilege to manipulate his or her testimony on "a particular subject" in a way that could "open the way to distortion of facts." 526 U.S. at 322. It then distinguished the trial setting from a plea colloquy, noting that a guilty plea does not involve a factual dispute and thus does not "pose a threat to the integrity of factfinding proceedings." *Id.* at 323.

In this case, there is little danger that Hanson will manipulate the information available to the court for purposes of sentencing. Again, we note the difference in the subject matter addressed by a PSI report as compared to a report of psychological evaluation. Additionally, the integrity of the proceedings is preserved because the sentencing court identifies and appoints the

11

psychiatrist or psychologist preparing the report and the State receives a copy of the psychological evaluation and may present arguments to the court at the sentencing hearing regarding what effect, if any, the results of the evaluation should have in the court's determination of an appropriate sentence. *See* I.C. § 19-2522(4). Consequently, we find the policy considerations underlying application of the waiver rule in the guilt phase to be less persuasive in the context of the sentencing phase.

Therefore, because a PSI and a psychological evaluation do not cover the same subject matter and because there is little reason to apply the general waiver rule in presentencing proceedings, we hold that a defendant may waive the Fifth Amendment privilege against self-incrimination in order to submit to a psychological evaluation without waiving it with respect to participation in the PSI.

### 3. The district court's failure to order a psychological evaluation was not harmless error.

The State argues that even if the district court erred by failing to order a psychological evaluation, the error was harmless because the court considered Hanson's mental status and recommended evaluation and treatment while incarcerated. We disagree.

The harmless error rule "establishes that any error, defect, irregularity or variance cited on appeal which does not affect substantial rights shall be disregarded." *Harper*, 129 Idaho at 91, 922 P.2d at 388 (citing I.C.R. 52; *State v. Zimmerman,* 121 Idaho 971, 976, 829 P.2d 861, 866 (1992)). The State relies on *Harper* for the proposition that the sentencing court's error in failing to order an evaluation is harmless where the court orders or recommends treatment as a component of the sentence. In *Harper*, the district court's order for a psychological evaluation did not require the evaluation to address all of the factors in I.C. § 19-2522(3), and therefore the report to the court did not contain all of the required elements. However, we held that any error was harmless because the district court had the missing information before it from other sources and considered that information *prior to* imposing sentence. *Id.*[5] Thus, in *Harper*, the defendant suffered no prejudice because the sentencing court considered all the statutorily-required information before imposing sentence thereby satisfying the purpose of the requirement.

---

[5] The Court also noted that the purpose of a psychological evaluation is to assist the court in determining whether to recommend psychological treatment during the defendant's confinement, that the defendant's request was for treatment at the state penitentiary, and that the court had in fact ordered that treatment. *Harper*, 129 Idaho at 91, 922 P.2d at 388.

As noted, the language of I.C. § 19-2522 is mandatory and indicates that the court is to consider the report before sentencing. Similarly, upon receipt of evidence pertaining to the defendant's mental condition, I.C. § 19-2523(1) mandates that the sentencing court consider the defendant's mental condition, "in addition to other criteria provided by law," when "determining the sentence to be imposed." In view of this unambiguous expression by our Legislature that sentencing courts are to obtain and consider evidence of the defendant's mental condition, we are unable to find that the failure to do so in this case is harmless error.

We acknowledge that the district court recommended that Hanson receive a psychological evaluation while incarcerated. However, when there is reason to believe that the defendant's mental condition will be a significant factor at sentencing, as there is here, the sentencing court may not ignore the obligation imposed by law because of a belief that the applicable statute is "poorly drafted" or because of a disagreement with the interpretation of that statute by the appellate courts of this state.[6] Therefore, we vacate the judgment.

**B. The district court did not abuse its discretion when it denied Hanson's request for a competency evaluation.**

Hanson argues that the district court abused its discretion by denying his request for a competency evaluation prior to sentencing. Hanson contends that the court only considered whether he understood the charges against him, but did not evaluate whether he had the ability to assist his attorney with his defense during the sentencing proceedings. We affirm the ruling of the district court.

The decision to order an evaluation to determine a defendant's competency to stand trial is within the discretion of the trial court. *State v. Moore*, 126 Idaho 208, 212, 880 P.2d 238, 242 (1994). By statute, if there is a reason to doubt the defendant's competency, the court must order a "qualified psychiatrist or licensed psychologist to examine and report upon the mental

---

[6] Trial courts are not free to willfully disregard precedent from the appellate courts of this state. We reiterate our previous position on this subject:

> The entire Court membership had the same understanding as *to the effect of a new principle of law announced by the Court of Appeals;* it becomes precedential law of this state, and all tribunals inferior to the Court of Appeals are obligated to abide by decisions issued by the Court of Appeals. To our knowledge, neither a district judge nor a trial judge has ever suggested not being bound by new principles of law, whether they emanate from this Court or from the Court of Appeals….

*State v. Guzman*, 122 Idaho 981, 986, 842 P.2d 660, 665 (1992) (emphasis in original). Although the district court's statements in this case demonstrate that the final partial sentence in this quotation is now outdated, we take this opportunity to remind trial judges that they do not have the liberty to consciously disregard the principles of law articulated by the appellate courts of this state.

condition of the defendant to assist counsel with defense or understand the proceedings." I.C. § 18-211(1). The two-pronged test for competency "to stand trial is '[w]hether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding of the proceedings against him.'" *Dunlap v. State*, 141 Idaho 50, 59, 106 P.3d 376, 385 (2004) (quoting *State v. Green,* 130 Idaho 503, 505, 943 P.2d 929, 931 (1997)). There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." *Drope v. Missouri,* 420 U.S. 162, 180 (1975). The opinion of the defendant's attorney "certainly is not determinative," but the attorney "is in the best position to evaluate a client's comprehension of the proceedings." *Dunlap*, 141 Idaho at 59, 106 P.3d at 385 (citing *Hernandez v. Ylst,* 930 F.2d 714, 718 (9th Cir. 1991)).[7] However, "[t]he mere fact that [a defendant] did not heed his counsel's advice and was uncooperative or that his conduct on the stand would have more likely hurt than help his case, does not render him incompetent to stand trial." *State v. Longoria*, 133 Idaho 819, 823, 992 P.2d 1219, 1223 (Ct. App. 1999). Thus, where the court reasonably considers both prongs of the test, its decision to deny an attorney's request for a competency evaluation is not an abuse of discretion.

Here, the district court properly considered the request for a competency evaluation. We first note that Hanson's conflict counsel gave only two reasons for requesting the competency evaluation: because he believed it would help determine why Hanson declined to participate in the pre-sentence report, and because he was having difficulty communicating with Hanson. Counsel did not state that Hanson was unable to participate or assist in the sentencing proceedings. However, the court's comments at the sentencing hearing demonstrate that it considered whether Hanson was capable of assisting with his defense. The court noted that Hanson was able to express concern about his original attorney's ability to represent him during the sentencing phase. Further, Hanson wrote letters to the court in support of his own defense on issues concerning due process and the legal process in general. While the court did not recite the exact language of the standard, these comments indicate the court considered both prongs of the

---

[7] At oral argument, Hanson's attorney suggested that this Court should adopt a rule requiring trial courts to give great weight to the opinion of trial counsel requesting competency evaluations. However, there is little we could add to our statement in *Dunlap* without entirely removing the decision from the district court's discretion.

14

legal standard applicable to its exercise of discretion. We therefore affirm the district court's denial of Hanson's request for a competency evaluation.[8]

## C. The remaining issues on appeal are moot.

An issue is moot if "a favorable judicial decision would not result in any relief." *Dunlap*, 141 Idaho at 62, 106 P.3d at 388 (citing *Murphy v. Hunt,* 455 U.S. 478, 481–82, (1982)). In *Dunlap*, we held that where the district court had already granted a new sentencing hearing for another error, the defendant's request for resentencing because of ineffective assistance of counsel was moot. *Id.* Consequently, an issue is moot if its resolution will not result in relief beyond that already granted.

Here, Hanson argues that the district court failed to properly consider his mental health and its effect on his actions. He suggests that in its denial of his request for a psychological evaluation, the district court committed reversible error because that denial prevented the court from fully complying with I.C. § 19-2523(1). Hanson also argues that the district court improperly denied his Rule 35 Motion for Reconsideration because, by failing to order a psychological evaluation prior to sentencing, it imposed his sentence in an illegal manner. Thus, the basis for both of these issues is that the district court erred in failing to order a psychological evaluation as required by I.C. § 19-2522, the same underlying argument Hanson asserts as grounds for the other issues in his appeal. Because we have already determined that the district court erred by not ordering a psychological evaluation and that the judgment must therefore be vacated, these issues are moot and we do not address them in this opinion.

## IV. CONCLUSION

We affirm the district court's denial of Hanson's request for a competency evaluation. We reverse the district court's denial of Hanson's request for a psychological evaluation pursuant to I.C. § 19-2522 because 1) the record shows Hanson's mental condition would be a significant factor at sentencing, and 2) it incorrectly held that Hanson could not invoke his Fifth Amendment privilege against self-incrimination with regard to the PSI but waive the privilege in order to obtain a psychological evaluation. We vacate the district court's judgment and remand for further proceedings consistent with this opinion.

---

[8] Due to the amount of time that has passed since Hanson was sentenced, we note that upon remittitur the district court will possess the authority to order a competency evaluation if it finds there is reason to doubt Hanson's competency at the time of resentencing.

15

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.