IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 44724

| ISAAC JOSEPH RINKE, | ) | 2018 Unpublished Opinion No. 460 |
|---|---|---|
| | ) | |
| Petitioner-Appellant, | ) | Filed: May 18, 2018 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel A. Hoagland, District Judge.

Order granting motion for summary dismissal, affirmed in part, reversed in part, and case remanded.

Paul E. Riggins, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

GUTIERREZ, Judge

Isaac Joseph Rinke appeals from the district court's order summarily dismissing his amended petition for post-conviction relief. Rinke argues that the district court erred wherein he presented a prima facie case on his claims of ineffective assistance of counsel. For the following reasons, we affirm in part, reverse in part, and remand.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State brought the following charges against Rinke: (1) domestic violence with a traumatic injury (felony) (Idaho Code § 18-918(2)), (2) attempted strangulation (felony) (Idaho Code § 18-923), (3) aggravated assault (felony) (Idaho Code § 18-905), (4) second degree kidnapping (felony) (Idaho Code § 18-4501), and a sentencing enhancement for use of a deadly weapon in the commission of a felony (felony) (Idaho Code § 19-2520). Rinke entered a guilty

1

plea to the domestic violence with a traumatic injury and attempted strangulation charges in return for the dismissal of the remaining charges. The trial court entered a judgment of conviction and commitment, sentencing Rinke to ten years determinate on the domestic violence with a traumatic injury charge and to fifteen years indeterminate on the attempted strangulation charge, to run consecutive to the first term. Rinke pursued an Idaho Criminal Rule 35 motion and a direct appeal; neither was successful.

Rinke filed a verified petition for post-conviction relief asserting numerous claims. Rinke then filed a memorandum in support of his petition, along with an affidavit in support of the petition. The State filed an answer averring that, to the extent that Rinke's claims should have been raised on direct appeal but were not, the claims were procedurally barred, and to the extent that the petition contained bare and conclusory allegations unsubstantiated by affidavits, records, or other admissible evidence, it failed to raise any genuine issue of material fact. The State subsequently moved for summary disposition and filed a brief in support of the motion. Rinke filed a response to the State's motion for summary dismissal, as well as affidavits from potential witnesses, a neuropsychological report prepared for this post-conviction case, and jail records. The post-conviction court treated Rinke's response as a motion to amend and gave Rinke twenty days to file an amended petition. Rinke then filed his amended petition. The State responded by filing an answer to the amended petition and a brief in support of dismissal of the amended petition. After a hearing, the post-conviction court entered an order granting the State's motion for summary disposition and dismissed the amended petition. Rinke appealed.

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under I.R.C.P. 8(a)(1).

2

Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code Section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief.[1] *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

## III.

## ANALYSIS

### A.    Ineffective Assistance of Counsel Claims

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007).

Where, as here, the petitioner was convicted upon a guilty plea, to satisfy the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's

---

[1]    Because Rinke presents an overarching argument that the post-conviction court employed an improper standard by requiring that he present more than a prima facie case, we note that the post-conviction court correctly employed the standard laid out in this section. On appeal, this Court will review the evidence Rinke has submitted, determine whether Rinke's allegations are clearly disproven by the underlying record, and then decide whether the evidence submitted amounts to a prima facie showing as to each element of each claim.

4

errors, he or she would not have pled guilty and would have insisted on going to trial. *Plant v. State*, 143 Idaho 758, 762, 152 P.3d 629, 633 (Ct. App. 2006). To establish prejudice at the sentencing phase, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the proceeding would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. A reasonable probability does not mean "more likely than not"; it means a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S at 693-94. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

Rinke appeals the post-conviction court's summary dismissal of the following claims: (1) ineffective assistance of counsel during the pretrial phase, including failing to conduct an adequate investigation, failing to interview witnesses, and failing to conduct a competency or mental health evaluation; (2) ineffective assistance of counsel during the entry of plea and presentencing phase, including failing to conduct a competency examination of Rinke and making inaccurate statements regarding the plea bargain agreement; and (3) ineffective assistance of counsel during the sentencing phase, including failing to inform the court of the need for a competency evaluation, failing to inform Rinke of his right to remain silent during the presentencing investigation report and domestic violence evaluation, and failing to correct inaccurate statements made by the court. We address each claim in turn.[2]

### 1. Failure to investigate

Rinke's first claim of ineffective assistance of counsel is that his attorney failed to investigate "potentially exculpatory evidence," resulting in Rinke "having no choice but to plead guilty rather than proceed to jury trial." Below, Rinke provided the post-conviction court with affidavits from four potential witnesses. According to Rinke, witnesses R.G. and Y.H. would

---

[2] There are three claims that Rinke does not pursue on appeal: (1) counsel's alleged failure to spend sufficient time with him to prepare a competent defense to the criminal charges and to adequately confer with Rinke about trial strategies; (2) counsel's alleged failure to adequately inform Rinke of the elements of the offenses to which he pleaded guilty; and (3) counsel's alleged failure to object to misinformation regarding dismissed charges, various prosecutorial statements regarding Rinke, specific sentencing recommendations made by the victim, and other improper statements presented at the sentencing hearing.

have testified that the victim told them significantly different versions of the events than those contained in the police report. Specifically, R.G. would have testified that the victim had told her that Rinke had "become agitated one evening, that he had aggressively pushed her up against a wall, that he put his hands around her neck, that she felt some 'crunching' as a result, and that she had hit her head as a result of being pushed up against the wall." According to R.G., the victim said that Rinke "then let go of her, and she walked upstairs and she called the police." Y.H. would have testified that the victim told him that Rinke "had thrown her or slammed her against a wall" and "threw a water bottle which bounced off of a wall and hit her in the head." The testimony of J.S. would have pertained to Rinke's "declining mental health state during the days leading up to the events in question," including "several alarming statements about hurting himself." The last potential witness, J.M., allegedly would have provided valuable impeachment evidence against the victim, which could have been used to attack the victim's credibility and "frame her character for untruthfulness." This witness would have testified to the victim's reputation for deceit and the witness's opinion that the victim is "manipulative and deceitful." J.M. would also have testified to specific instances of untruthful conduct. Rinke also argues that his attorney's performance was deficient for failing to investigate his and the victim's phone and employment records, which would show that the victim was not held hostage for multiple days.

The post-conviction court adopted the State's reasoning, in part, and dismissed the claim, ruling that Rinke's claims were bare and conclusory, raised no genuine issues of material fact, and were contradicted by the record. Specifically, the State argued that the phone and employment records do not impeach the victim's story that she provided to the police--even if it did impeach the victim's impact statement made at sentencing--meaning those records would not have been helpful to Rinke's defense if he proceeded to trial. Moreover, the State argued that the witnesses' affidavits do not show that they would have provided admissible testimony as to the honesty or truthfulness of the victim or Rinke or a significantly different version of what occurred.

In assessing the reasonableness of counsel's investigation, we consider not only the quantum of evidence known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further. *Wiggins v. Smith*, 539 U.S. 510, 527 (2003); *Strickland*, 466 U.S. at 691; *State v. Mathews*, 133 Idaho 300, 307, 986 P.2d 323, 330 (1999). In judging the defense's investigation, hindsight is discounted by pegging adequacy to "counsel's

6

perspective at the time" investigative decisions are made and by giving a "heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 689, 691.

Therefore, the question is whether the district court ignored evidence that would have led a reasonable attorney to investigate further. *Wiggins*, 539 U.S. at 527. If the witnesses and records at issue would have actually undermined the victim's testimony or credibility, Rinke's counsel's failure to investigate further would be considered deficient performance; but that is not the case here. *See Mitchell*, 132 Idaho at 280, 971 P.2d at 733; *see also Gregg v. State*, 279 P.3d 396, 402-03 (Utah 2012). After reviewing the record, we conclude that the post-conviction court did not ignore the affidavits of the witnesses or the phone and employment records, but rather correctly determined that the contents of these documents would not have bolstered Rinke's defense.

With regard to the proffered witness testimony, J.M.'s affidavit contains statements that are inadmissible due to I.R.E. 608(b), which prohibits parties from utilizing evidence of specific instances of conduct to attack the credibility of a witness. Though J.M., the victim's ex-husband, would have been permitted to testify as to his opinion of the victim's truthfulness and the victim's reputation for dishonesty, the specific instances of conduct provided in his affidavit would not have been admissible. It is not deficient performance to fail to interview every witness that could testify as to a victim's penchant for dishonesty. Additionally, because Rinke's mental health would not have shielded him from prosecution, failure to contact J.S. regarding his potential testimony was not deficient performance. Moreover, the statements in R.G.'s and Y.H.'s affidavits do not contradict the version of the story that the victim provided to the police nor the crimes charged by the prosecutor. The police report states that the victim said that Rinke grabbed the victim's hair, slammed the back of her head into the wall several times, grabbed her throat and squeezed extremely hard, pushed her against the wall, and threw a water bottle that struck her on the head. Though R.G.'s recollection of what the victim said does not contain every detail in the police report, we cannot say it is contradictory as everything in R.G.'s affidavit is contained in the police report. The only inconsistency is that R.G.'s affidavit states that Rinke "then let go of her, and she walked upstairs and she called the police," while the victim told the police that the strangulation and water bottle incident occurred three days prior to her calling the police, which occurred on the same day that Rinke allegedly held the victim hostage by threatening her and holding a shard of glass to her neck. Y.H.'s affidavit also

7

supports the victim's story contained in the police report in that Y.H. says that the victim told Y.H. that Rinke had slammed the victim against a wall and threw a water bottle that struck her in the head. Because the proffered evidence would either not have been admissible or would not have bolstered Rinke's defense, Rinke has failed to make a prima facie showing of deficient performance. *See Mitchell*, 132 Idaho at 280, 971 P.2d at 733; *cf. Hamilton v. State*, 226 P.3d 588, 592 (Mont. 2010) ("Although Hamilton provided Gilligan with information that he subjectively believed would impeach the credibility of the victim and her mother, Hamilton's petition fails to show that the information would have been admissible and effective.").

The phone and employment records are also not exculpatory, as Count IV merely alleged that on or about September 12, 2013, Rinke held the victim against her will. The State did not need to prove that Rinke held the victim hostage for multiple days; the impression that the victim was held hostage for multiple days came from the victim's statement read at sentencing. Therefore, to the extent that the phone and employment records show that the victim was not being held hostage over multiple days, they are irrelevant. Because the proffered evidence would not have bolstered Rinke's defense, Rinke has failed to make a prima facie showing of deficient performance.

Additionally, Rinke's claim that his attorney's performance was deficient for failing to investigate is contradicted by the record, in which he states that he is satisfied with his attorney's representation of him. *See Eddington v. State*, 162 Idaho 812, 820, 405 P.3d 597, 605 (Ct. App. 2017). At the entry of plea hearing, the following exchange occurred:

> THE COURT: Do you believe that you have had adequate time to conduct all necessary discovery in the matter?
> COUNSEL: Yes.
> . . . .
> THE COURT: Mr. Rinke, your attorney has just made various representations to the Court regarding your conversations concerning these guilty pleas. Do you agree with those representations?
> THE DEFENDANT: I do, Your Honor.

Accordingly, Rinke has not shown that the district court failed to adequately consider the record in reaching its determination that Rinke failed to make a prima facie showing of deficient performance for failure to investigate.

Even if Rinke could show deficient performance, he would not be able to show prejudice. In order to satisfy the prejudice prong of *Strickland*, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and

8

would have insisted on going to trial. *Plant*, 143 Idaho at 762, 152 P.3d at 633. The petitioner is required to provide "more than his own potentially self-serving statement." *McKeeth v. State*, 140 Idaho 847, 852, 103 P.3d 460, 465 (2004); *see Booth v. State*, 893 N.W.2d 186, 190 (N.D. 2017) ("No court is satisfied with a defendant's subjective, self-serving statement that, with competent advice, he would have insisted on going to trial."). Instead, the petitioner must allege facts that, if proven, would support a conclusion that rejection of the plea bargain would have been rational because valid defenses existed. *Booth*, 893 N.W.2d at 190. Because the evidence that Rinke's counsel would have allegedly uncovered through Rinke's proposed investigation would either not have been admissible or not bolstered Rinke's defense, Rinke has failed to show why further investigation of this evidence would have rationally led to Rinke rejecting the plea bargain. Because Rinke has failed to satisfy the deficient performance prong, as well as the prejudice prong, we hold that the post-conviction court did not err in summarily dismissing this claim.

## 2. Failure to seek competency evaluation

The test to determine whether a defendant is competent to stand trial is "[w]hether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding of the proceedings against him." *State v. Daniel*, 127 Idaho 801, 803, 907 P.2d 119, 121 (Ct. App. 1995). "While the opinion of . . . counsel certainly is not determinative, a defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings." *Hernandez v. Ylst*, 930 F.2d 714, 718 (9th Cir. 1991). Idaho Code § 18-211(1) provides that whenever there is reason to doubt a defendant's capacity to understand the proceedings or assist in his own defense, the court shall appoint at least one qualified psychiatrist or licensed psychologist or shall request the director of the Department of Health and Welfare to designate at least one qualified psychiatrist or licensed psychologist to examine and report upon the mental condition of the defendant to assist counsel with defense or understand the proceedings.

On appeal, Rinke argues that the district court erred by dismissing this claim because there was a genuine issue of material fact. Rinke relies on statements made by his attorney at the sentencing hearing and the neuropsychological evaluation he had prepared for this post-conviction action to support his argument that there is a genuine issue of material fact. The State underscores that the mental health screening done for sentencing purposes did not raise

9

incompetency concerns and that the psychologist's statements, located in the neuropsychological report, regarding Rinke's mental health at the time of the proceedings were conclusory. The post-conviction court dismissed the claim on the basis that Rinke had:

> . . . failed to raise a genuine issue of material fact that his counsel was deficient for failing to request or conduct a mental health evaluation in the underlying case because: (1) the assertion is contradicted by the record, (2) a mental health evaluation was ordered, performed and provided to the Court prior to sentencing that reflected no mental health issues, (3) there [were] no material mental health issues noted or obvious in the presentence investigation report, (4) Petitioner asserts he was competent to assist in his own defense if counsel would have just spent more time with him, and (5) Dr. Ward's recent report does not demonstrate that Petitioner was incompetent at the time, nor at present.

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly*, 149 Idaho at 521, 236 P.3d at 1281. Rinke's counsel did note at the sentencing hearing that his office had concerns about Rinke's mental health, but counsel also noted that these were "[n]ot 18-211 competency type issues." *See Hernandez*, 930 F.2d at 718. Furthermore, counsel explained to the trial court that Rinke "has in the past taken medication for his mental health issues and continues on medication today." Moreover, the court-ordered mental health screening did not raise incompetency concerns. The presentence investigation report also yielded nothing to suggest that Rinke suffered from a mental disorder that would have rendered him legally incompetent, though it did provide insight into his depression and bipolar disorder. *See Dunlap*, 141 Idaho at 60, 106 P.3d at 386 (holding that evidence of depression and a personality disorder was insufficient to put defense counsel on notice that a competency evaluation was necessary).

When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman*, 125 Idaho at 647, 873 P.2d at 901. The psychologist's statements regarding Rinke's mental state at the time of plea negotiations and plea hearing are conclusory. Specifically, the psychologist concluded, "There is strong evidence [Rinke] was experiencing an acute mental health exacerbation and crisis when incarcerated on his current offenses. I saw no evidence in the record that his mental state was stabilized prior to his legal proceedings or that

his mental competency was evaluated during the legal proceedings." The psychologist never states *what* evidence was strong or *why* that evidence was strong. Moreover, the psychologist does not explain what type of evidence would have been needed to indicate Rinke's mental state had stabilized prior to his legal proceedings.

Upon the record before the trial court, Rinke failed to establish a prima facie case of ineffective assistance of counsel for failure to seek a competency evaluation. Accordingly, the post-conviction court did not err in summarily dismissing this claim.

### 3.     Misstating the terms of the plea agreement

In his affidavit, Rinke claimed that his counsel informed him that the terms of the plea agreement involved the State recommending a sentence of five years, with two years determinate and three years indeterminate, and retained jurisdiction. Rinke argued, in his amended petition, that providing this incorrect information constituted deficient performance on the part of counsel and prejudiced Rinke, as he relied on these representations when pleading guilty. The State countered that even if Rinke's counsel had made the alleged statements, Rinke would not be able to prove he was prejudiced by counsel's deficient performance because he was completely aware of the plea agreement the court recited on the record. The post-conviction court ruled that Rinke's claim was contradicted by the record, noting that the trial court recited the plea agreement and advised Rinke that by pleading guilty he could receive a sentence of up to twenty-five years in prison. The post-conviction court concluded that even if Rinke's counsel's performance was deficient, Rinke did not show prejudice.

The post-conviction court was not required to accept Rinke's assertion that he chose to plead guilty due, in part, to his attorney's alleged representations regarding his sentence if Rinke's assertion was clearly disproven by the record. *Thomas v. State*, 161 Idaho 655, 657-58, 389 P.3d 200, 202-03 (Ct. App. 2017). At the entry of plea hearing, the following exchange occurred between the court; the State, Rinke, and defense counsel:

> THE COURT:  So guilty to counts one and two.  And in return for the plea, counts three, four and five are to be dismissed.  And what are the sentencing recommendations, if any, from the parties?
> THE STATE:  Your Honor, there are none.
> DEFENSE COUNSEL:  None.
> THE COURT:  None?
> THE STATE:  None, Your Honor.
> THE COURT:  All right. The Court understands that the defendant will be pleading guilty to count one, domestic violence with traumatic injury, which is a

11

felony, which can expose the defendant to a sentence of up to ten years in prison, a $10,000 fine or both, aggression counseling, loss of the right to possess a firearm, and the requirement to provide a DNA sample and right thumbprint impression to the Idaho State Database. And to count two, attempted strangulation, a felony, for which the defendant can receive a sentence of up to 15 years in prison, and a fine of up to $50,000 or both.

Because sentences can be imposed consecutively in Idaho, the defendant can receive sentences of up to 25 years in prison and a fine of up to $60,000, or both fine and imprisonment, restitution would also be required if appropriate to any victim or victims.

Counsel, do you believe you have had adequate time to discuss this case and all of its ramifications with your client?

DEFENSE COUNSEL: I do, Your Honor.

. . . .

THE COURT: Mr. Rinke, your attorney has just made various representations to the Court regarding your conversations concerning these guilty pleas. Do you agree with those representations?

THE DEFENDANT: I do, Your Honor.

. . . .

THE COURT: Do you understand that with regard to these guilty pleas that they expose you to sentences of up to 25 years in prison, fines of up to $60,000, or both fine and imprisonment . . . .

THE DEFENDANT: Yes, Your Honor.

Another exchange between Rinke and the court took place after Rinke was sworn in as witness:

Q. Do you understand the nature of the charges against you and the possible penalties that may be imposed as a result of these guilty pleas?

A. I do.

. . . .

Q. BY THE COURT: Has anyone promised you that I would be easy on you if you pled guilty to the offense?

A. No, sir.

Q. Do you understand that the only person who can promise you what sentence you will actually receive is the judge?

A. Yes, sir.

. . . .

Q. Has anyone offered you any rewards of any kind to make you plead guilty other than the dismissal of the remaining charges and the fact that the sentence will be open to argument?

A. No, Your Honor.

Q. Do you understand that I am not bound by any promise or recommendation from either party as to punishment, and that I may accept, reject or modify any sentencing recommendations which may be made?

A. I do, Your Honor.

Q. Are you pleading guilty just to get it over with even though you believe you're innocent?

A. No, sir.

12

Q. Do you understand that before I will dispose of your case, I will order a presentence investigation be prepared as well as an anger or domestic violence evaluation, and I will study those before sentencing?

A. Yes, sir.

Q. Do you understand that those reports would reveal any prior criminal record you might have and I will take that into consideration in sentencing?

The record in this case amply demonstrates that Rinke was aware that (1) there were no sentencing recommendations; and (2) he was facing a sentence of up to twenty-five years in prison. Therefore, even if Rinke's counsel did tell him the State was recommending five years, Rinke was informed otherwise at the entry of plea hearing. Under these circumstances, Rinke could not have been prejudiced by his counsel's misrepresentations. *See State v. Fortin*, 124 Idaho 323, 327, 859 P.2d 359, 363 (Ct. App. 1993). Accordingly, Rinke has failed to establish a prima facie case of ineffective assistance of counsel for misstating the terms of the plea agreement.

### 4. Failure to request psychological evaluation for sentencing purposes

Idaho Code § 19-2522(1) instructs district courts to appoint at least one psychiatrist or licensed psychologist to examine and report upon the mental condition of a defendant if there is reason to believe the mental condition of the defendant will be a significant factor at sentencing and good cause is shown. In determining whether a mental condition will be a significant factor at sentencing, trial courts can consider, inter alia, the severity of the mental disorder and the relationship it has to the crime. *State v. Schultz*, 149 Idaho 285, 288, 233 P.3d 732, 735 (Ct. App. 2010).

A trial court may sentence a mentally ill defendant without ordering a new psychological evaluation if information in existing reports satisfies the requirements of I.C. § 19-2522(3). *See State v. Craner*, 137 Idaho 188, 189, 45 P.3d 844, 845 (Ct. App. 2002). However, not every mental health report complies with the exacting requirements of I.C. § 19-2522(3). *See, e.g.*, *State v. McFarland*, 125 Idaho 876, 881, 876 P.2d 158, 163 (Ct. App. 1994) (holding psychologist's report completed when defendant was suicidal did not supply in-depth analysis required by I.C. § 19-2522(3)); *State v. Pearson*, 108 Idaho 889, 891-92, 702 P.2d 927, 929-30 (Ct. App. 1985) (holding psychological report prepared pursuant to I.C. § 19-2522(3) was insufficient because it did not provide requisite in-depth analysis). This Court has further explained that a GAIN screening evaluation is not a formal psychological evaluation. *State v. Black*, 161 Idaho 867, 871, 392 P.3d 45, 49 (Ct. App. 2017).

Rinke alleged that his counsel's performance was deficient because he heedlessly disregarded Rinke's interests and committed legal error by failing to inform the trial court that a psychological evaluation was necessary for sentencing purposes despite knowing that Rinke's mental health would be a significant factor at sentencing. Rinke argued that had counsel requested the psychological evaluation, Rinke likely would have received a lesser sentence. The State answered, asserting that Rinke's claim was "contrary to the record" because a "mental health evaluation was ordered prior to sentencing and read by the court."

On appeal, Rinke argues that the post-conviction court erred in dismissing his claim for ineffective assistance of counsel for failure to request a psychological evaluation under I.C. § 19-2522, as he has made a prima face showing by providing evidence, including a more recent neuropsychological evaluation, that his deteriorating mental health was apparent and a factor at sentencing. The State contends that (1) trial counsel could not render deficient performance by not requesting what the trial court itself ordered; and (2) Rinke could not have been prejudiced because the mental health evidence in the record was extensive.

After review of the record, it is apparent that Rinke's counsel knew that Rinke suffered from mental disorders. At the entry of plea hearing, Rinke informed the trial court that he took medication for his bipolar disorder, schizophrenia, PTSD, and temporal lobe seizures. Rinke's counsel at sentencing also acknowledged that "from the very beginning" there were concerns about Rinke's mental well-being, stating that there appeared to be "a great deal of chaos going on in his head." Although the trial court ordered a mental health screening prepared under I.C. § 19-2524, this mental health screening was merely a review of the GAIN report, which this Court has explained is not a formal psychological evaluation and does not conform to the exacting requirements of I.C. § 19-2522(3). *Black*, 161 Idaho at 871, 392 P.3d at 49.

The mental health screening report added depression to the list of conditions Rinke had already self-reported at the entry of plea hearing, thus bolstering the argument that the trial court should have ordered an in-depth psychological evaluation that complied with I.C. § 19-2522(1) and I.C. § 19-2522(3) if requested. The PSI also contained records from Boise State University Health Services that highlighted Rinke's erratic and violent mental state, including his alluding to suicide and homicide.[3] In the neuropsychological evaluation that Rinke provided to the post-

---

[3] The State's argument that Rinke suffered no prejudice because the record already reflected that he suffered from mental health issues ignores the purpose of I.C. § 19-2522(3),

14

conviction court, the psychologist concluded that Rinke "is likely prone to extreme and expansive mood swings" and appeared "prone to grandiosity, irritability and angry outbursts," which are symptoms consistent with bipolar disorder. Ada County Jail records also reflected mental health issues, noting that Rinke heard voices and had suicidal thoughts. We conclude that Rinke has provided evidence indicating that a psychological evaluation may have been mandatory due to the severity of his mental health issues, assuming they were a significant factor at sentencing. *See State v. Hanson*, 152 Idaho 314, 321, 271 P.3d 712, 719 (2012) (explaining that a psychological evaluation was necessary in light of Hanson's history of bullying, animal cruelty, obsessive behavior, suicidal thoughts, attempted suicide, auditory hallucinations, as well as other behavior suggesting Hanson suffered from some form of mental disturbance).

Additionally, on appellate review, a trial court's decisions or comments at sentencing are another factor that may demonstrate that a defendant's mental condition was a significant factor in determining the sentence. *Id.* at 320, 271 P.3d at 718. The trial court stated, "Most people aren't all bad. . . . But [Rinke] has not been successful in controlling his impulses in violence and those violent impulses have been turned more than once against his close domestic partners." The trial court also noted the mental health evaluations in the file before recommending "further mental health evaluation during the RDU process" and authorizing "necessary mental health treatment, counseling, and medication while incarcerated." *See id.* at 320-21, 271 P.3d at 718-19 (explaining that by recommending various treatments and therapies for Hanson while incarcerated and that Hanson receive a psychological evaluation, the district court demonstrated that it considered Hanson's mental condition a significant factor at sentencing). These facts are enough, for purposes of this case, to make a prima facie showing that Rinke's mental health was a significant factor at sentencing and that his attorney did not move the court to order the mandatory evaluation despite being aware of Rinke's mental health issues. *See State v. Coonts*, 137 Idaho 150, 153, 44 P.3d 1205, 1208 (Ct. App. 2002) (explaining that when a trial court does not order a psychological evaluation sua sponte, defense counsel can request one, even if the request is not formalized with a written motion). Rinke, therefore, has made a prima facie showing of deficient performance.

---

which is to provide the sentencing judge with information regarding the relation of the mental illness to the crime, the possibility of treatment, and a consideration of the danger that the defendant poses to the public.

Rinke has also made, for the purpose of surviving a motion for summary disposition, a prima facie showing of a reasonable probability that the result of the sentencing phase would have been more favorable to Rinke if his counsel had informed the district court of a need for a psychological evaluation pursuant to I.C. § 19-2522. The defense asked for a rider, which was consistent with the presentence investigator's recommendation. The State asked for twenty-five years with five years determinate and twenty years indeterminate. The trial court, after expressing concerns regarding Rinke's lack of control over his violent impulses, imposed a sentence of twenty-five years with ten years determinate and fifteen years indeterminate, which is more than even the State recommended. Moreover, the trial court made no mention of the mitigating nature of Rinke's mental health issues, which could have been better developed if an I.C. § 19-2522 evaluation had been ordered. I.C. § 19-2523; *State v. Delling*, 152 Idaho 122, 132-34, 267 P.3d 709, 719-21 (2011) (explaining that trial courts must adequately consider a defendant's mental condition at sentencing if it is a factor); *State v. Miller*, 151 Idaho 828, 834, 264 P.3d 935, 941 (2011) ("When considering the sentence to be imposed, if the defendant's mental condition is a significant issue, the sentencing judge must also weigh that mental condition as a sentencing consideration."). Accordingly, Rinke has presented a prima facie case of ineffective assistance of counsel at sentencing for failure to request an I.C. § 19-2522 evaluation, and this issue should proceed to an evidentiary hearing.

### 5. Failure to advise of right to remain silent

This Court has held that a routine presentence interview is not a critical stage of the adversarial proceedings, meaning that a defendant does not have a Sixth Amendment right to counsel. *Stuart v. State*, 145 Idaho 467, 471, 180 P.3d 506, 510 (Ct. App. 2007). However, the Idaho Supreme Court has held that participation in a psychosexual evaluation constitutes a critical stage of the proceedings and that a defendant has the Sixth Amendment right to counsel regarding the decision of whether to submit to the evaluation. *Estrada v. State*, 143 Idaho 558, 562-63, 149 P.3d 833, 837-38 (2006). In *Estrada*, the Court applied *Strickland* and held that Estrada's counsel was deficient in failing to inform Estrada of his right to assert the privilege against self-incrimination during his psychosexual evaluation and that the deficiency resulted in prejudice because the district court relied on the evaluation in sentencing Estrada. *Estrada*, 143 Idaho at 564-65, 149 P.3d at 839-40. In *Murray v. State*, 156 Idaho 159, 321 P.3d 709 (2014), the Idaho Supreme Court extended the holding in *Estrada*, which applied to psychosexual

16

evaluations, to court-ordered domestic violence evaluations. In *Murray*, the Supreme Court explained that an attorney's performance is deficient if the attorney fails to inform his client of his Fifth Amendment right against self-incrimination during a domestic violence evaluation, even if the district court has already advised the defendant of his *Estrada* rights. *Murray*, 156 Idaho at 166-67, 321 P.3d at 716-17. The Court in *Murray* then determined that Murray had failed to show prejudice in light of the district court's advising Murray of his *Estrada* rights. *Murray*, 156 Idaho at 167-68, 321 P.3d at 717-18.[4]

At the entry of plea hearing, the trial court explained to Rinke that he was giving up his privilege against self-incrimination and his right to remain silent, including his right to refuse to participate in a domestic violence evaluation due to a waiver in the terms of his plea agreement. The trial court then ordered a domestic violence evaluation. At the sentencing hearing, the State mentioned the domestic violence evaluation, especially the parts noting that Rinke had "extremely limited insight into his domestic violence problem" and that Rinke's amenability to treatment was "low to moderate." The State also underscored that Rinke scored in the "high risk to reoffend" category in both the general and intimate relationship evaluations. The trial court, in explaining its sentencing decision, listed the "74 percent chance of reoffending" and "concern about minimization" from the domestic violence evaluation as factors it considered.

In his amended petition, Rinke contended that his counsel failed to inform Rinke of his right to remain silent during the presentence investigation and domestic violence evaluation, which led to him making statements that the district court relied on in imposing a harsher sentence. In his affidavit, Rinke further explained that the district court had erroneously informed him he was waiving his right to remain silent during the domestic violence evaluation. The post-conviction court followed the reasoning in *Murray*, ruling that even if defense counsel was deficient, the district court advised Rinke that he was waiving his right to remain silent by pleading guilty pursuant to an agreement with the State. Rinke renews his argument on appeal, asserting that the district court erred by dismissing this claim despite Rinke making a prima facie case of ineffective assistance of counsel. The State's response is that Rinke told the trial court that he understood he was waiving his right against self-incrimination during the domestic violence violation pursuant to the terms of the plea agreement.

---

[4]     We note that *Murray* was decided after an evidentiary hearing. *Murray v. State*, 156 Idaho 159, 163, 321 P.3d 709, 713 (2014).

17

Rinke raises a genuine issue of material fact. The post-conviction court and the State rely on the trial court's statements that Rinke was waiving his rights under the terms of his plea agreement. The waiver does not appear to be part of the plea agreement. The terms of the plea agreement, as memorialized in the transcript of the entry of plea hearing, were that two of the four charges, as well as the sentencing enhancement, would be dropped in return for Rinke pleading guilty to the remaining two charges. Rinke has argued that the district court was mistaken and that his trial counsel did nothing to rectify this error or explain to him his *Estrada* rights. As explained in *Murray*, an attorney's failure to advise his client of his *Estrada* rights constitutes deficient performance.

Rinke, for purposes of surviving summary dismissal, has made a prima facie showing of a reasonable probability that the result of the sentencing phase would have been more favorable to Rinke if he had been advised of his right to remain silent during the domestic violence evaluation. The defense asked for a rider, which was consistent with the presentence investigator's recommendation. The State asked for twenty-five years with five years determinate and twenty years indeterminate. The trial court, after expressing concerns arising from the content of the domestic violence evaluation, imposed a sentence of twenty-five years with ten years determinate and fifteen years indeterminate, which is more than even the State recommended. Accordingly, Rinke has pleaded a prima facie case of ineffective assistance of counsel as to deficient performance and prejudice at sentencing, and this issue should proceed to an evidentiary hearing.

### 6. Failure to correct allegedly inaccurate statements

In his amended petition, Rinke argued that his attorney failed to object to incorrect statements made by the trial court at sentencing, which prejudiced Rinke because the trial court relied on this misinformation in imposing a harsher sentence. The pertinent statements made by the trial court at the sentencing hearing are:

> The fact of the matter is however when you look at the physical evidence in this case, the defendant whether he realizes it or not has minimized. The victim in this case indicated that her CT scan was clear. Yes, her CT scan was clear. But her CT scan showed something that you don't very seldom see in attempted strangulation cases, actual swelling on the interior structures of the neck confirmed by the CT scan.
>
> With regard to the neck itself, the photographs showing the bruising and the scratches on the victim's neck, the actual photographs showing the injuries to the victim.

The State responded that Rinke failed to raise a genuine issue of material fact and noted that the trial court was permitted to consider information of a hearsay nature from the presentence report. The post-conviction court ruled that Rinke had not raised a genuine issue of material fact on his claim for ineffective assistance of counsel for failure to object to statements regarding the victim's injuries. The post-conviction court reasoned that evidence of the "victim's injuries were properly before the Court at the sentencing hearing."

In his opening brief, Rinke argues that the post-conviction court "simply glossed over the issue, focusing on 'judicial misconduct' rather than addressing [his] argument of ineffective assistance of counsel" and that he did provide evidence of this claim. The State responds that medical records attached to the presentence investigation report show that a CT scan of the victim's neck revealed swelling.

As noted, the sentencing court referred to swelling of the interior structures of the neck, as demonstrated on the CT scan, concluding that such swelling was unusual on an attempted strangulation case. The court may have misread the medical reports. There is a note that reads "CT Neck angio W Contrast; Indications: swelling." This note first appears in the "Orders" section of the medical report, along with a time-stamp of 17:48. This note appears again, in bold and italicized, at the beginning of the "Results" section, which was inputted at 20:07. The "Results" section has a "Findings" subsection that does not indicate any internal trauma. Based on the above time-stamps and the "Patient to CT" note time-stamped at 18:48, it appears that the "Indications: swelling" note was entered prior to the test and results, means that the patient indicated swelling--and difficulty speaking and swallowing--and therefore a CT angiogram was being ordered. The "Initial Assessment and Plan" includes a section stating: "Differential diagnosis includes injury to the neck vessels, pseudoaneurysm, hyoid bone fracture, [v]ocal cord injury, as well as many others. . . . the plan at this time is proceed with CT scan soft tissue of neck to rule out any type of significant potential vascular injury." This was written before the CT scan and "differential diagnosis," as used here, would appear to create a list of manifestations or injuries to look for in order to rule out possible causes of symptoms, which in this case were difficulty speaking and swallowing. *Cf. Nield v. Pocatello Health Servs., Inc.*, 156 Idaho 802, 810, 332 P.3d 714, 722 (2014) (using the term "differential etiology" to describe this process of elimination). Finally, the results of the CT scan were listed as, "Patient's labs are all normal. Patient's CT of her neck as well as angiography [do not] reveal any findings to suggest

significant injury." Therefore, the CT scan does not appear to document swelling on the interior structures of the neck.

A judge may consider a broad range of information when fashioning an appropriate sentence. *Williams v. New York*, 337 U.S. 241, 246 (1949); *State v. Morgan*, 109 Idaho 1040, 1042, 712 P.2d 741, 743 (Ct. App. 1985). A defendant is denied due process when the sentencing judge relies upon information that is materially untrue or when a judge makes materially false assumptions of fact. *State v. Gawron*, 124 Idaho 625, 627, 862 P.2d 317, 319 (Ct. App. 1993). The trial court may have misread the CT scan report, thereby causing the court to rely on information that was materially untrue in determining Rinke's sentence. Therefore, Rinke has made a prima facie showing of ineffective assistance of counsel for failure to object when the sentencing court appeared to have misread the CT scan report. Genuine issues thus exist as to whether the court relied on incorrect evidence and to how material such information was at sentencing. Accordingly, an evidentiary hearing is necessary.

## IV.

## CONCLUSION

Rinke's claims concerning his attorney's omissions and misstatements during the pretrial and plea stages were properly dismissed by the post-conviction court, as Rinke failed to make a prima face showing with regard to those claims. However, Rinke has made a prima facie showing with regard to all three of his claims related to sentencing. Accordingly, the district court's order summarily dismissing Rinke's amended petition is affirmed in part, reversed as to the sentencing claims, and remanded for further proceedings consistent with this opinion.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.